liWOODARD, Judge.
Defendant-employer appeals the decision of the Office of Workers’ Compensation, awarding plaintiff-employee temporary total disability benefits and supplemental earnings benefits. We affirm in part and reverse in part.
FACTS
On December 13, 1994, plaintiff Roxanne Daigrepont sustained an injury which arose out, and in the course of, her employment as a valet with defendant, Grand Casino Avo-yelles (GCA). Both parties stipulated that on that date an 18-wheel tractor-trailer drove under the canopy where Daigrepont was working and severed a cable which was used to hang signs from the canopy. The cable fell, striking Daigrepont on her right cheek and eye, and a metal hook attached to the cable became entangled in her hair. Daigrepont finished her shift, but the next day she was examined at Avoyelles Hospital due to complaints of pain in her right eye. Upon ^examination, it was determined that Daigrepont had sustained a corneal abrasion. She was given medication and an eye patch.
Daigrepont was then referred to Dr. Frank Sanchez, O.D. and was first examined on December 16,1994. Dr. Sanchez suspected that a small amount of fluid may have been deposited in the retina, causing decreased vision, but he did not impose work restrictions. Daigrepont returned to work the next day, but has not worked since.
On December 27, 1994, Dr. Chuck Mangu-bat examined her for complaints of headaches and neck pain. He found tenderness in the right infraorbital area and in the right suprascapularis muscle. On January 13, 1995, Dr. L.J. Mayeux, who noted that Daig-repont complained of occasional headaches, examined her but found no spasm at that time. On January 26, 1995, she was still complaining of headaches and pain, and Dr. Mayeux recommended physical therapy. Daigrepont returned to Dr. Mayeux’ office on March 28, 1995, after discontinuing physical therapy, and was diagnosed with a spasm. Physical therapy was then reinstated. Dr. Mayeux subsequently treated Daigrepont off and on for almost a year. While the medical records of Dr. Mayeux show that Daigrepont had neck spasms on several dates, he testified that, based on the time lapse between her accident and the complaints, the neck spasms were not related to her accident.
On August 31, 1995, an MRI was conducted but could not be confirmed due to a possibility of movement during the imaging, which compromised the quality of the imaging. After reviewing this report, Dr. May-eux referred Daigrepont to Dr. Bruce Razza, an orthopedic physician chosen by Daigre-pont, and stated that he would defer to Dr. Razza’s opinion on causation of findings. After an examination on October 12, 1995, Dr. *520 Razza diagnosed Daigrepont with a probable right C6-7 disk herniation, recommended a repeat cervical MRI, and considered her disabled from any gainful employment at that time. Dr. Razza further opined that based on his findings and Daigrepont’s history, her symptoms were a result of her accident at GCA. At that time, GCA began paying weekly indemnity benefits.
At the request of GCA, Daigrepont was examined by Dr. Clifton Shephard on November 9, 1995. Dr. Shephard found the MRI to be of reasonable quality and recommended a CT scan, which was performed on November 16, 1995. Dr. ^Shephard opined that the CT scan was normal and recommended that Daigrepont return to work.
Daigrepont filed a disputed claim for compensation on March 23, 1995, and a hearing on the matter was held on February 8, 1996. The hearing officer found Daigrepont to have been temporarily totally disabled from December 17, 1994 (the day she last worked), through January 12,1996, and awarded back due benefits for that period. She further ruled that Daigrepont is currently capable of returning to work as a valet at GCA, pending review of any job descriptions by her treating physician, and that she is entitled to supplemental earnings benefits without reduction. It is from this ruling that GCA appeals.
ASSIGNMENTS OF ERROR
GCA claims the following assignments of error:
(1) The hearing officer committed legal error and was manifestly erroneous in finding Roxanne Daigrepont entitled to temporary total disability benefits for the period December 17, 1994 through January 12,1996.
(2) The hearing officer committed legal error and was manifestly erroneous in finding Roxanne Daigrepont entitled to supplemental earnings benefits for the period January 13, 1996 until further order of the court.
LAW
Initially, it must be noted that a hearing officer’s determination as to whether the claimant met his burden of proof constitutes a factual determination. As such, this determination will not be disturbed on review absent manifest error. An appellate court will only set aside a factual finding by a hearing officer if the record demonstrates that there was no reasonable basis for the finding and that the finding was clearly wrong. Stobart v. State Through DOTD, 617 So.2d 880 (La.1993). This standard of review demands great deference because “only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the |4listener’s understanding and belief in what is said.” Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
TemporaRY Total Disability
Benefits for temporary total disability (TTD) are governed by La.R.S. 23:1221(1), which requires that compensation for TTD:
shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment ... while working in any pain_
In Comeaux v. Sam Broussard Trucking, 94-1631 (La.App. 3 Cir. 5/31/95); 657 So.2d 449, 454 (citing Succession of Bartie, 472 So.2d 578, 582 (La.1985)) this court held that “[t]o satisfy the clear and convincing standard, it must be established that the ‘existence of the disputed fact [is] highly probable, that is, much more probable than its non-existence.’” This court further held that a claimant may prove a disability by medical and lay testimony and that the hearing officer must weight both in order to determine whether the plaintiff has met his burden. Id. Furthermore, this court has held that “there must be objective medical evidence to carry the burden of proving disability by clear and convincing evidence.” Cormier v. Resthaven Nursing Home, 95-230 (La.App. 3 Cir. 1/17/96); 670 So.2d 233, 237.
CGA asserts that the hearing officer erred insofar as her ruling was unsupported by any objective evidence of an injury. We do not *521 agree. Dr. Mangubat examined Daigrepont on December 27,1994 for complaints of headache and neck pain and diagnosed her with musculoskeletal headaches. While Dr. May-eux opined that Daigrepont’s headaches were not related to her injury, he did note that on two occasions she had spasms in her neck. Furthermore, Dr. Razza felt that there was a possible posterior lateral disk herniation on the right side at C6-7 and also found muscle spasms. In addition to this objective medical evidence, the hearing officer found Daigre-pont’s complaints of pain to be consistent and credible. The hearing officer noted that Daigrepont’s pain had eased due to physical therapy and resurfaced when that therapy was discontinued.
 Under the manifest error standard of review, an appellate court will not substitute its own judgment for that of the hearing officer where there is sufficient evidence to uphold his or her judgment. In the present case, the hearing officer was presented with the testimony and medical opinions of several doctors, as well as the testimony of Daigrepont herself. While much of the evidence introduced is conflicting, the hearing officer’s judgment is not so unsupported by the evidence that it is manifestly erroneous. For these reasons, the hearing officer’s award of TTD benefits is upheld.
Supplemental Earnings Benefits
In its second assignment of error, GCA asserts that the hearing officer committed legal error and was manifestly erroneous in finding Roxanne Daigrepont entitled to supplemental earnings benefits for the period January 13, 1996 until further order of the court. Specifically, GCA argues that Daigre-pont failed to introduce evidence sufficient to support a finding that she was incapable of earning 90% of her pre-injury wage.
La.R.S. 23:1221(3)(a) states in pertinent part:
For injury resulting in the employee’s inability to earn wages equal to ninety per cent or more of wages at the time of injury ... whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training and experience, such comparison to be made on a monthly basis.
In determining whether a claimant is entitled to SEB, the threshold inquiry is whether the employee has proven, by a preponderance of the evidence, that he or she is unable to earn wages equal to ninety percent or more of the wages he or she earned at the time of the injury. Smith v. Louisiana Dep’t of Corrections, 93-1305 (La.2/28/94); 633 So.2d 129. In her oral reasons for judgment, the hearing officer stated that Daigrepont testified that she “could have returned to work within the last three to four weeks.” Furthermore, Daigrepont affirmatively testified that she had not even looked for employment elsewhere and that she was able to work. Based on these facts, Daigrepont has not established that she is unable to earn wages equal to ninety | (¡percent or more of the wages she earned at the time of the injury. We, therefore, find that the hearing officer committed manifest error in awarding her SEB.
CONCLUSION
For the foregoing reasons, we find that the hearing officer did not err in awarding TTD benefits and affirm that decision. The award of SEB benefits, however, is reversed. Costs to be assessed equally between plaintiff and defendant.
AFFIRMED IN PART AND REVERSED IN PART.